No. 2790

Second Circuit

SHEETS v. THE TEXAS CO.

(November 6, 1926. Opinion and Decree.)

*(Syllabus by the Court)*

1. Louisiana Digest—Master and Servant —Par. 154, 159.

A slight injury to an eye that leaves only a small scar in the cornea that does not interfere with the vision in doing work is not compensable under the Louisiana Workmen's Compensation Act.

Bell vs. Merchant's Cotton Oil Co., 160 La. 585, 107 South. 436.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo.

Action by Curt Sheets against The Texas Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellee.

## STATEMENT OF THE CASE

REYNOLDS, J.   This action is brought under the Workmen's Compensation Act to recover $20 per week for 400 weeks for an injury caused by caustic soda splashing into plaintiff's right eye.

Defendant denied liability on the grounds:

First, that the injury was caused by plaintiff's deliberate failure to use an adequate guard or protection furnished him by defendant to protect him against accident; and,

Second, that there is only a slight injury to plaintiff's eye that does not and will not interfere with or diminish his earning capacity.

In the alternative, plaintiff alleged that if plaintiff is entitled to compensation he can only recover under Paragraph (e) of Subsection 1 of Section 8 of the Act.

On these issues the case was tried and there was judgment for defendant and plaintiff has appealed.

## OPINION

The first question to be decided is, plaintiff's right to recover compensation for the slight injury to his right eye.

Plaintiff testified, pages 2, 7, 8, 9:

"Q.   What flew in your eye?
"A.   Some of that caustic soda, it was like ice.

\* \* \* \*

"Q.   Now you were hurt on October the 4th?
"A.   Yes, sir.
"Q.   You went to the doctor and were under his attention until October the 19th?
"A.   Yes, sir.
"Q.   Then you went back to work?
"A.   Yes, sir.
"Q.   You did the same general work that you had done before?
"A.   Yes, sir.
"Q.   You continued to do that work until December the 18th, did you not?
"A.   Yes, sir.
"Q.   Then from October the 11th on until December 18th you went back and engaged in your regular occupation and continued to do that work until December the 18th?
"A.   Yes, sir.
"Q.   Why did you quit?
"A.   Because I wanted to.

\* \* \* \*

"Q.   The foreman was not dissatisfied with your work?
"A.   I don't suppose he was; he never said anything about it.
"Q.   Had no difficulty?
"A.   No, sir.
"Q.   You worked like you had previously worked?
"A.   Yes, sir.
"Q.   Had no difficulty doing it?
"A.   No, sir.
"Q.   You got the same pay?
"A.   Yes, sir.
"Q.   If you had gone back and continued there is no reason that you know of they would not have continued to pay you the same pay?
"A.   No, sir.
"Q.   You received compensation for the time that you were in the hospital, didn't you?
"A.   Yes, sir.
"Q.   You were paid the stipulated amount for that loss of time?
"A.   Yes, sir.

R. G. Collins testified, page 12:

"Q. Did he (meaning plaintiff) work there from October the 19th to December the 18th inclusive?

"A. Yes, sir.

"Q. Did he work just as he had before the accident?

"A. I did not see any difference.

"Q. Was there any apparent difference in any manner whatever that you could tell as you observed him?

"A. None.

"Q. Did he seem to have any difficulty, as far as you could observe him, seeing in his work?

"A. No, sir."

M. W. White testified, pages 29, 30:

"Q. After he received treatment, did Mr. Sheets come back to work?

"A. Yes, sir, he did; I think two weeks afterwards.

"Q. What kind of work did he do after he came back?

"A. The same kind that he had been doing before.

"Q. What rate of pay?

"A. The same rate of pay?

"Q. And he continued to work there until what date?

"A. I think it was the 18th day of December.

*    *    *    *

"Q. Did he have any difficulty in doing the work that he had been doing before the accident?

"A. I could not state that he did; I could not see any difference.

"Q. Was his work satisfactory?

"A. Yes, sir."

J. C. Dameron testified, page 56:

"Q. Did he manifest any difficulty in doing the work as far as you were able to see at all?

"A. I couldn't tell any difference; he did the same work he always had done."

Doctor J. L. Scales testified, pages 42, 43, 47:

"Q. Anatomically, what did you find the condition of that eye, the physical condition of the eye?

"A. I found a small scar on the cornea on the right eye, I think.

*    *    *    *

"Q. Did it cover any portion or part of the pupil?

"A. No, sir.

"Q. For ordinary sight and vision in doing work, did that interfere with the vision any?

"A. No, I don't think so.

*    *    *    *

"Q. Well, would it be aggravated by the injury?

"A. I don't think so.

"Q. Usually it would grow worse?

"A. Not from the injury, I don't think.

"Q. It is not impossible?

"A. I wouldn't say it is impossible, but I don't think it likely at all."

Doctor I. Henry Smith testified, pages 48, 51, 52:

"Q. What was the ultimate condition of the injury to the eye?

"A. The result, of course, is a scar on the cornea in about the position that Doctor Scales testified.

*    *    *    *

"Q. Doctor, what kind of a spot is that?

"A. Well, it is a small spot there.

"Q. Is it as large as the head of a ten-penny nail?

"A. No, sir.

"Q. It is plainly visible to the ordinary layman's eye?

"A. Yes, sir, if you get a good light on it anyone can see it.

"Q. What size would you say it was?

"A. About two millimeters.

"Q. About the size of a pea?

"A. No.

*    *    *    *

"Q. You heard Mr. Sheets describe the kind of work that he does?

"A. Yes, sir.

"Q. From your examination, was there any reason why he could not carry on that kind of work?

"A. I don't think so; none whatever.

"Q. Doctor, do you find that that man can draw a clear focus with that eye?

"A. Yes, sir.

"Q. You tested that?

"A. Yes, sir; he has no injury to the focus."

Doctor G. H. Cassity testified, page 60:

"Q. Was not this a question for an eye specialist? You have not, doctor, the instruments that a specialist uses to examine the eye?

"A. For what examination?

"Q. Well, I have had mine examined a great many times and the doctor uses quite a few instruments to look into the eye and make examinations. Are you equipped with all of these?

"A. Well, I don't use them all; I could use them. There is no necessity for it. There is no evidence of any nerve injury."

Under this evidence the provisions of the Workmen's Compensation Law, allowing compensation for 100 weeks for the loss of an eye, and the authority of Bell vs. Merchants Cotton Oil Co., supra, we are convinced that the injury sustained by plaintiff in this case is not compensable under the Employers' Liability Act.

This finding as to the injury to plaintiff's eye renders it unnecessary for us to pass upon the defense set up by defendant that plaintiff was barred from recovery on account of his failure to use adequate guards for his protection furnished him by the defendant; and as to that defense we express no opinion.

For the above reasons the judgment of the lower court is affirmed.